1
2
3
4                     UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
5                          AT TACOMA

6    PAYTON S.,
                                          Case No. 3:18-cv-05853-BHS-TLF
7                        Plaintiff,
                                          REPORT AND
8          v.                             RECOMMENDATION

9    COMMISSIONER OF SOCIAL               NOTED FOR NOVEMBER 13, 2019
     SECURITY,
10
                         Defendant.
11

12          Plaintiff has brought this matter for judicial review of Defendant's denial of her

13   application for supplemental security income benefits.

14          This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of

15   H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). As

     discussed below, the undersigned agrees that the ALJ erred and recommends that the ALJ's
16
     decision be reversed and remanded for an award of benefits.
17
                              I.    ISSUES FOR REVEW
18
            1.  Did the ALJ properly evaluate the medical opinion evidence?
19          2.  Did the ALJ err in evaluating Plaintiff's symptom testimony?

20
21
22
23
24
25

REPORT AND RECOMMENDATION - 1

1

## II.    BACKGROUND

On February 2, 2015, Plaintiff filed an application for supplementary security income

benefits, alleging a disability onset date of October 1, 2001.[1] AR 22, 330-38. Plaintiff's

application was denied upon initial administrative review and on reconsideration. AR 22, 239-

42, 248-50. A hearing was held before Administrative Law Judge ("ALJ") Allen Erickson on

May 11, 2017. AR 109-87. In a decision dated January 31, 2018, the ALJ Erickson found that

Plaintiff was not disabled. AR 19-33. The Social Security Appeals Council denied Plaintiff's

request for review on September 26, 2018. AR 1-6.

On October 23, 2018, Plaintiff filed a complaint in this Court seeking judicial review of

the ALJ's written decision. Dkt. 5. Plaintiff asks this Court to reverse the ALJ's decision and to

remand this case for an award of benefits or additional proceedings. Dkt. 11, pp. 12-15.

## III.    STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error;

or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648,

654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019).

This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759

F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports,

and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the

---

[1] Plaintiff filed earlier applications for disability insurance and supplemental security income benefits in 2009. AR 216. Plaintiff's applications were denied initially and upon administrative review. *Id.* On June 21, 2011, ALJ Mattie Harvin-Woode issued an unfavorable decision. AR 193-208. Plaintiff also filed an additional disability application on October 25, 2012. AR 216.

1   decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified

2   by the ALJ are considered in the scope of the Court's review. *Id.*

3                                    IV.    DISCUSSION

4          The Commissioner uses a five-step sequential evaluation process to determine if a

5   claimant is disabled. 20 C.F.R. § 416.920. The ALJ assesses the claimant's residual functional

6   capacity ("RFC") to determine, at step four, whether the claimant can perform past relevant

7   work, and if necessary, at step five to determine whether the claimant can adjust to other work.

8   *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step

9   five to show that a significant number of jobs that the claimant can perform exist in the national

10  economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.920(e).

11         In this case, the ALJ found that Plaintiff had the following severe, medically

12  determinable impairments: post-traumatic stress disorder ("PTSD"); major depressive disorder

13  ("MDD"); personality disorder; and learning disorder. AR 24. The ALJ also found that Plaintiff

14  had a range of non-severe impairments. AR 24-25. Relying on vocational expert ("VE")

15  testimony, the ALJ found that Plaintiff did not have any past relevant work, but determined that

16  there were other light and medium unskilled jobs Plaintiff could perform; therefore the ALJ

17  determined at step 5 that Plaintiff was not disabled. AR 32-33.

18         A.  Whether the ALJ erred in evaluating the medical opinion evidence

19         Plaintiff alleges that the ALJ erred in evaluating the opinions of examining physicians

20  Keith Krueger, Ph.D. and Tasmyn Bowes, Psy.D. Dkt. 11, pp. 3-8.

21         In assessing an acceptable medical source – such as a medical doctor – the ALJ must

22  provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a

23  treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer*

24  *v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

25

1    1988)). When a treating or examining physician's opinion is contradicted, the opinion can be

2    rejected "for specific and legitimate reasons that are supported by substantial evidence in the

3    record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

4    1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

5           1.  Dr. Krueger

6          Dr. Krueger evaluated Plaintiff for the Washington Department of Social and Health

7    Services ("DSHS") on August 20, 2015. AR 448-57. Dr. Krueger's evaluation consisted of a

8    clinical interview, a mental status examination, a personality inventory, and trail making

9    exercises. Based on this evaluation, Dr. Krueger assessed Plaintiff as having a range of moderate

10    mental limitations along with a marked limitation in communicating and performing effectively

11    in a work setting, and stated that the overall severity of Plaintiff's mental limitations was

12    moderate. AR 450. Dr. Krueger opined that Plaintiff's limitations would last for 6 months with

13    available treatment. AR 451.

14          The ALJ assigned "significant weight" to Dr. Krueger's opinion, reasoning that Dr.

15    Krueger had the opportunity to examine Plaintiff and based his opinion on firsthand

16    observations. AR 30-31. The ALJ also reasoned that Dr. Krueger's opinion was consistent with

17    Plaintiff's lack of mental health treatment for most of the period at issue, and the fact that when

18    Plaintiff did seek mental health treatment, she did so for "relatively minor, isolated issues, like

19    problems with a specific landlord at a specific point in time." *Id.*  The ALJ reasoned that stress

20    related to these issues "would not be expected to preclude the claimant's capacity for full time

21    work for a full 12 months." *Id.* With respect to the marked limitation assessed by Dr. Krueger,

22    the ALJ found that Dr. Krueger stated that this limitation "would only last for a period of six

23    months, meaning the claimant's symptoms would likely improve with appropriate treatment." *Id.*

24

25

1    Plaintiff argues that the ALJ has not provided an adequate explanation for excluding from

2   the RFC restrictions related to Plaintiff's marked limitation in communicating and performing

3   effectively in a work setting. Dkt. 11, p. 3. Plaintiff contends that Dr. Krueger's opinion that

4   Plaintiff's mental limitations would last 6 months was applicable to *all* Plaintiff's limitations, not

5   just the marked limitations he identified, and argues that if the ALJ was crediting the durational

6   restriction assessed by Dr. Krueger, this restriction would apply equally to all of Plaintiff's

7   mental limitations. Dkt. 11, p. 4.

8    The Court agrees. There is nothing in Dr. Krueger's opinion to suggest that the temporal

9   restriction contained in his opinion would apply to certain limitations but not others. The ALJ

10   engaged in impermissible cherry-picking by discounting the marked limitation assessed by Dr.

11   Krueger on this basis. *See Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

12    2.  Dr. Bowes

13    Dr. Bowes evaluated Plaintiff for DSHS on July 27, 2016. AR 585-94. Dr. Bowes

14   evaluation consisted of a clinical interview, a mental status examination, and a personality

15   assessment. Based on this evaluation, Dr. Bowes assessed Plaintiff as having a range of moderate

16   and marked mental limitations, along with a severe limitation in understanding, remembering,

17   and persisting in tasks by following detailed instructions, and stated that the overall severity of

18   Plaintiff's mental limitations was marked. AR 589. Dr. Bowes stated that these limitations would

19   last for "18 plus" months with available treatment. *Id.*

20    The ALJ assigned "little weight" to Dr. Bowes' opinion, reasoning that: (1) Dr. Bowes'

21   opinion was an outlier, (2) Plaintiff did not seek significant treatment during the period at issue,

22   and did not even begin seeking mental health treatment with a counselor until after she saw Dr.

23

24

25

1    Bowes, and (3) Plaintiff was "relatively stable and happy" during treatment and even reported

2    the ability to work while in therapy. AR 31-32.

3          With respect to the first reason, the ALJ's characterization of Dr. Bowes' opinion as an

4    "outlier" is not a specific, legitimate reason for discounting it. An ALJ need not accept an

5    opinion which is inadequately supported "by the record as a whole." *Batson v. Comm'r of Soc.*

6    *Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). But an ALJ cannot reject a physician's

7    opinion in a vague or conclusory manner. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th

8    Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). The ALJ must do

9    more than offer his or her own conclusions. He or she must set forth his or her own

10   interpretations and explain why they, rather than the doctors, are correct. *Embrey v. Bowen*, 849

11   F.2d 418, 422 (9th Cir. 1988)). A conclusory statement that a medical opinion is an "outlier"

12   cannot serve as a specific and legitimate reason for discounting that opinion.

13         The Court notes that some of the evidence in this case was submitted after the ALJ issued

14   his decision. AR 40-108. The Appeals Council denied review of Plaintiff's claim and opted not

15   to exhibit this evidence. AR 2; *see Brewes v. Commissioner of Social Security*, 682 F.3d 1157,

16   1160 (9th Cir. 2012) (when a claimant submits evidence for the first time to the Appeals Council,

17   which considers that evidence in denying review of the ALJ's decision, the new evidence is part

18   of the administrative which the district court must consider in determining whether the

19   Commissioner's decision is supported by substantial evidence.)

20         The evidence submitted to the Appeals Council indicates that Dr. Bowes' opinion, which

21   assessed Plaintiff as having a range of marked mental limitations, was not an outlier.

22         The evidence submitted to the Appeals Council contains a Review of Medical Evidence

23   completed by Phyllis Sanchez, Ph.D. on August 7, 2016. AR 45-48. Dr. Sanchez assessed

24

25

1   Plaintiff as having a range of moderate and marked mental limitations, along with a severe

2   limitation in understanding, remembering, and persisting in tasks by following detailed

3   instructions. AR 47.

4          The new evidence also contains a DSHS psychological/psychiatric evaluation conducted

5   by Terilee Wingate, Ph.D. on June 1, 2018. AR 40-44. Dr. Wingate's evaluation consisted of a

6   clinical interview and a mental status examination. Based on this evaluation Dr. Wingate

7   assessed Plaintiff as having a range of moderate and marked mental limitations, and stated that

8   the overall severity of Plaintiff's mental limitations was marked. AR 42. Dr. Wingate stated that

9   Plaintiff's limitations would be "lifelong". AR 43.

10         This new evidence establishes that Dr. Bowes' opinion is not an outlier, but part of a

11  continuum of medical opinion evidence indicating worsening mental health symptoms.

12         With respect to the ALJ's second reason, Plaintiff's failure to seek mental health

13  treatment cannot serve as a specific and legitimate reason for discounting Dr. Bowes' opinion.

14  Social Security Ruling ("SSR") 16-3p provides that if an individual fails to follow prescribed

15  treatment that might improve symptoms, an ALJ may find that the alleged intensity of an

16  individual's symptoms is inconsistent with the record.  However, an ALJ "will not find an

17  individual's symptoms inconsistent with the evidence in the record on this basis without

18  considering possible reasons he or she may not comply with treatment or seek treatment

19  consistent with the degree of his or her complaints." *See also Fair v. Bowen*, 885 F.2d 597, 603

20  (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed

21  course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.").

22

23

24

25

1    Here, the ALJ did not consider other possible reasons why Plaintiff did not seek mental

2   health treatment.

3    It must be pointed out that medical records show Plaintiff's first mental health treatment

4   happened in 1993, and Plaintiff was first diagnosed with psychiatric impairments as early as

5   1999. AR 657-65, 674-80, 681-700. While not relevant for assessing disability during the period

6   at issue, the record is clear that Plaintiff's psychiatric impairments, and her attempts to seek

7   treatment for those impairments, predate August 2015. Yet, the ALJ found that Plaintiff did not

8   undergo any psychiatric treatment between her application date of February 2, 2015 and August

9   2015, when she saw a DSHS provider. AR 28. While the first instance of Plaintiff visiting a

10   treatment provider after her application date (i.e. the amended date of onset – February 2, 2015)

11   was in August 2015, the ALJ incorrectly inferred that Plaintiff had not received any treatment

12   whatsoever before that assessment.

13    As such, the ALJ's finding that Plaintiff did not begin seeking mental health treatment

14   with a counselor until after she saw Dr. Bowes is not supported by substantial evidence, and

15   reliance on this finding cannot serve as a specific and legitimate reason for discounting Dr.

16   Bowes' opinion.

17    To the extent that there are gaps in Plaintiff's mental health treatment history, the ALJ

18   erred by not considering other possible explanations for Plaintiff's failure to seek treatment. For

19   example, in cases involving mental illness, an individual suffering from such a condition may not

20   even realize, or may deny that his or her condition "reflects a potentially serious mental illness."

21   *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). "'[I]t is a questionable practice to

22   chastise one with a mental impairment for the exercise of poor judgment in seeking

23

24

25

rehabilitation.'" *Id.* (quoting with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Given Plaintiff's financial status, an inability to afford treatment was also a factor in this case. Social Security regulations and Ninth Circuit case law establish that an inability to afford treatment or access low cost medical services can be a legitimate reason for not seeking medical treatment. *See* SSR 16-3; *Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017), *citing Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds."); *see also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it").

Plaintiff has never worked at the level of substantial gainful activity, and last received income from work in 2006. AR 347. At the hearing, Plaintiff testified that she was homeless, and received $197.00 per month in benefits along with food stamps. AR 174-75, 479. In February 2017, Plaintiff's therapist stated that Plaintiff's housing and financial difficulties would be a barrier to regular treatment attendance. AR 479.

Regarding the ALJ's third reason, the ALJ's findings that Plaintiff was "relatively stable and happy" during treatment, and even reported the ability to work while in therapy, are not specific and legitimate reasons for discounting Dr. Bowes' opinion.

First, the ALJ's finding is both conclusory and unsupported by the record, since Plaintiff's treatment history during the period at issue is replete with evidence of aggravated

1  mental health symptoms. AR 486, 490, 492, 496, 498-99, 505. Second, the ALJ's statement that

2  Plaintiff was able to work while in therapy appears to be a misreading of the record. The

3  evidence cited by the ALJ to support this proposition is a treatment notation from February 2017

4  when Plaintiff stated that she was staying in a motel after being evicted from her home, a stay

5  she funded by "holding a sign" on a corner. AR 479.  The ALJ appears to have interpreted this

6  statement to mean that Plaintiff had obtained employment as a sign spinner, and paid for her

7  motel stay out of this income. AR 29.

8        Plaintiff states that she was "begging on a street corner" for rent money, and was not

9  employed at this time. Dkt. 11, pp. 11-12. During the hearing, Plaintiff testified that after she was

10  evicted from her apartment, she rented a room from a woman. AR 174. Plaintiff testified that the

11  woman's son did not want anybody living with her, and arranged to pay for a seven day stay in a

12  motel. *Id.* Plaintiff's solicitation of additional funds from passersby does not constitute work

13  activity.

14        B.  <u>Whether the ALJ erred in evaluating Plaintiff's symptom testimony</u>

15        Plaintiff maintains that the ALJ erred in evaluating her subjective allegations. Dkt. 11,

16  pp. 8-12.

17        In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v.*

18  *Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is

19  objective medical evidence of an underlying impairment that could reasonably be expected to

20  produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir.

21  2014). If the first step is satisfied, and provided there is no evidence of malingering, the second

22  step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can

23

24

25

1    provide specific findings and clear and convincing reasons for rejecting the claimant's testimony.

2    *Id.*

3         In discounting Plaintiff's allegations, the ALJ reasoned that: (1) Plaintiff had no

4    treatment from the application date through the date of the second DSHS evaluation, a period of

5    18 months, (2) Plaintiff "seemed to have done well" during therapy and was "generally happy

6    and she had developed a good rapport with her counselor", (3) the RFC is consistent with

7    Plaintiff's statement that she was able to work holding a sign on a street corner in order to pay

8    rent, (4) at no point did the claimant's treating sources ever say she would not be able to work

9    because of her mental health symptoms, and (5) Plaintiff reported that "a random set of reasons"

10   prevented her from working. AR 30.

11        For the reasons discussed above, the ALJ's first three reasons cannot serve as clear and

12   convincing reasons for discounting Plaintiff's allegations. *See supra* Section A.

13        With respect to the fourth reason, the absence of a statement from Plaintiff's treating

14   physicians that she was disabled does not mean that the ALJ should interpret this absence as

15   being inconsistent with a finding of disability. If the limitations assessed by these physicians

16   were consistent with a finding that Plaintiff was disabled under Social Security regulations, the

17   ALJ would be able to interpret the assessments in that way regardless whether the physicians

18   explicitly state a conclusion about disability.

19        One of the ALJ's primary responsibilities in adjudicating Social Security cases is to

20   assess a residual functional capacity based on medical opinions. *See* 20 C.F.R. § 416.927(d)(1)

21   (The Social Security Administration is responsible for making the determination or decision

22   about whether a claimant meet the statutory definition of disability.). Had Plaintiff's physicians

23   stated that she was "disabled", such a statement  may have been problematic because it could be

24

25

1    offering an opinion on a question of disability reserved for the Commissioner of Social Security.

2    *Id.* (A statement by a medical source that a claimant is "disabled" or "unable to work" does not

3    mean that the Social Security Administration will determine a claimant is disabled.).

4          Regarding the ALJ's fifth reason, the ALJ appears to have relied on a notation in Dr.

5    Krueger's opinion that there were a "random set of reasons" why Plaintiff was unable to work.

6    AR 449. The ALJ reasoned that this statement indicated that Plaintiff was unable to work not just

7    because of her medical conditions, "but to other reasons as well." (sic) AR 30.

8          An ALJ is entitled to draw inferences logically flowing from the evidence. *See Sample v.*

9    *Schweiker*, 694 F.2d 639, 642 (9th Cir.1982). Here, the ALJ's inference does not flow logically

10    from the evidence. The inclusion of the phrase "random set of reasons" in Dr. Krueger's opinion

11    cannot reasonably be interpreted to mean that Plaintiff was not working for reasons unrelated to

12    her medical impairments. First, it is unclear whether this statement was made by Plaintiff or if it

13    was merely Dr. Krueger's characterization of her comments. Second, even if Plaintiff did use

14    this phrase, the fact that other factors, such as homelessness, made it more difficult for Plaintiff

15    to seek and obtain employment does not mean that Plaintiff's mental impairments would not still

16    be disabling in the absence of these aggravating factors.

17          C.  <u>Remand for an Award of Benefits</u>

18          Plaintiff asks this Court to reverse the ALJ's decision and to remand this case for an

19    award of benefits. Dkt. 11, pp. 12-15. "'The decision whether to remand a case for additional

20    evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v.*

21    *Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232

22    (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court

23    should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th

24

25

1    Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's

2    errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

3          The Ninth Circuit has developed a three-step analysis for determining when to remand

4    for a direct award of benefits. Such remand is generally proper only where:

5          "(1) the record has been fully developed and further administrative proceedings
           would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
6          reasons for rejecting evidence, whether claimant testimony or medical opinion;
           and (3) if the improperly discredited evidence were credited as true, the ALJ
7          would be required to find the claimant disabled on remand."

8    *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

9          The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is

10   satisfied, the district court still has discretion to remand for further proceedings or for award of

11   benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

12         Here, the record has been fully developed, and further administrative proceedings would

13   serve no useful purpose. The reasons given by the ALJ for rejecting the medical opinion

14   evidence and Plaintiff's symptom testimony are not legally sufficient. If Plaintiff's testimony and

15   the medical opinion evidence, in particular the opinion of Dr. Bowes, were credited as true, there

16   is no serious doubt that the ALJ would be required to find Plaintiff disabled on remand. *See*

17   *Garrison*, 759 F.3d at 1021 (courts have the flexibility to remand for further proceedings when

18   the record as a whole creates "serious doubt" as to whether the claimant is disabled within the

19   meaning of the Social Security Act.). As such, Plaintiff is disabled, and remand for an award of

20   benefits is the appropriate remedy.

21                                    CONCLUSION

22         Based on the foregoing discussion, the undersigned recommends that the Court find the

23   ALJ erred when he determined Plaintiff to be not disabled. The Court recommends Defendant's

24

25

decision to deny benefits should be REVERSED and this matter REMANDED for an award of benefits.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); see also FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on November 13, 2019.

Dated this 30th day of October, 2019.

Theresa L. Fricke
United States Magistrate Judge